FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 29, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JOSEPH S.,[1] <br>             Plaintiff, <br><br>    vs. <br><br> ANDREW M. SAUL, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>           Defendant. | No. 4:20-cv-05075-MKD <br><br> ORDER DENYING PLAINTIFF'S <br> MOTION FOR SUMMARY <br> JUDGMENT AND GRANTING <br> DEFENDANT'S MOTION FOR <br> SUMMARY JUDGMENT <br><br> ECF Nos. 20, 21 |

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 20, 21. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing,

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

ORDER - 1

is fully informed.  For the reasons discussed below, the Court denies Plaintiff's

motion, ECF No. 20, and grants Defendant's motion, ECF No. 21.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

rational interpretation, [the court] must uphold the ALJ's findings if they are

ORDER - 2

supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

"where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's

decision generally bears the burden of establishing that it was harmed.  *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act.  First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

ORDER - 3

404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  *Id.*

1    The claimant bears the burden of proof at steps one through four above.

2    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

3    step five, the burden shifts to the Commissioner to establish that 1) the claimant is

4    capable of performing other work; and 2) such work "exists in significant numbers

5    in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d

6    386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

8    On February 14, 2017 Plaintiff applied for Title II disability insurance

9    benefits alleging a disability onset date of January 24, 2011.[2]  Tr. 16, 69, 181-82.

10   The application was denied initially and on reconsideration.  Tr. 94-100, 102-08.

11   Plaintiff requested a hearing after the deadline, and his request for a hearing was

12   dismissed on January 25, 2018.  Tr. 82-86.  Plaintiff appealed the dismissal, and on

13   September 14, 2018, the Appeals Council remanded the case for a hearing.  Tr. 87-

---

16   [2] Plaintiff previously applied for benefits on May 2, 2011, which resulted in an

17   initial denial; Plaintiff did not appeal the decision.  Tr. 59.  Plaintiff again applied

18   for benefits on July 24, 2013, which resulted in denials on initial and

19   reconsideration; Plaintiff requested a hearing but then withdrew the request for

20   hearing, resulting in a March 13, 2015 order of dismissal.  Tr. 57, 59.

ORDER - 6

90.  Plaintiff appeared before an administrative law judge (ALJ) on March 13,

2019.  Tr. 36-53.  On April 19, 2019, the ALJ denied Plaintiff's claim.  Tr. 13-33.

At step one of the sequential evaluation process, the ALJ found Plaintiff,

who met the insured status requirements through September 30, 2016, has not

engaged in substantial gainful activity since January 24, 2011.  Tr. 18-19.  At step

two, the ALJ found that Plaintiff had the following severe impairments: status post

bilateral carpal tunnel releases in 2011 and left cubital tunnel release in 2015, and

mild osteoarthritis in the bilateral thumbs.  Tr. 19.

At step three, the ALJ found Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed

impairment.  Tr. 20.  The ALJ then concluded that Plaintiff had the RFC to

perform light work with the following limitations:

> [Plaintiff could] frequently climb stairs and ramps, balance, stoop, kneel,
> crouch, or crawl, and never climb ropes, ladders, or scaffolds.  He [could]
> occasionally finger and handle with his non-dominate left hand.  He should
> avoid concentrated exposure to extreme cold, industrial vibrations and
> hazards.

Tr. 20.

At step four, the ALJ found Plaintiff was unable to perform any of his past

relevant work.  Tr. 26.  At step five, the ALJ found that, considering Plaintiff's

age, education, work experience, RFC, and testimony from the vocational expert,

there were jobs that existed in significant numbers in the national economy that

ORDER - 7

Plaintiff could perform, such as usher, counter clerk, sandwich board carrier, and call out operator.  Tr. 27.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the alleged onset date of January 24, 2011, through the date last insured.  Tr. 28.

On March 11, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence;

2.  Whether the ALJ conducted a proper step-two analysis;

3.  Whether the ALJ properly evaluated Plaintiff's symptom claims; and

4.  Whether the ALJ conducted a proper step-five analysis.

ECF No. 20 at 6.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in her consideration of the opinion of Robert Smiley, M.D.  ECF No. 20 at 8-10.

ORDER - 8

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported

ORDER - 9

by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).  The opinion of a nonexamining physician may serve as substantial evidence if it is supported by other independent evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

Dr. Smiley testified at Plaintiff's hearing and rendered an opinion on Plaintiff's functioning.  Tr. 38-43.  Dr. Smiley diagnosed Plaintiff with bilateral carpel tunnel status post release in 2012, cubital tunnel syndrome status post 2015 release, and noted Plaintiff has complained of chronic pain and there are notes of somatoform-related problems.  Tr. 40-42.  Dr. Smiley opined that during the time prior to the date last insured, Plaintiff should have been able to function at the light level, and he would have only been able to do things with his left hand on an occasional basis.  Tr. 43.  Dr. Smiley also testified that he knows he is not supposed to testify regarding Plaintiff's somatoform problems, but he suspects Plaintiff would have had "an awful lot of days where he couldn't or wouldn't work" because of his "chronic pain and somatoform problems." *Id.*  The ALJ gave Dr. Smiley's opinion significant weight.  Tr. 24.  As Dr. Smiley is a non-examining source, the ALJ must consider the opinion and whether it is consistent with other independent evidence in the record. *See* 20 C.F.R. § 404.1527(b),(c)(1); *Tonapetyan v. Holter,* 242 F.3d 1144, 1149 (9th Cir. 2001); *Lester*, 81 F.3d at 830-31.

ORDER - 10

1    Plaintiff argues the ALJ erred in rejecting Dr. Smiley's opinion that Plaintiff

2 would miss work.  ECF No. 20 at 9.  However, Dr. Smiley opined that based on

3 the objective evidence, Plaintiff should have been able to function at the light level.

4 Tr. 42-43.  Dr. Smiley stated, "I suspect" Plaintiff would have had a lot of days

5 where he "couldn't or wouldn't" work, due to his somatoform problems and

6 chronic pain.  Tr.  43.  Dr. Smiley's statement indicated he only suspected Plaintiff

7 would have missed work, and it indicates the objective evidence does not support

8 his suspicion.  *See* Tr. 42-43.  Dr. Smiley also did not state how many days he

9 thought Plaintiff would have been unable to work, versus how many days he was

10 simply unwilling to work.

11    Further, the ALJ gave supported reasons why he found the diagnoses of

12 somatoform disorder and chronic pain syndrome were not severe impairments.

13 The ALJ found Plaintiff has no more than mild limitations due to any

14 psychological conditions, and thus found Plaintiff's psychological conditions,

15 including somatoform disorder, non-severe.  Tr. 19.  Plaintiff argues the ALJ failed

16 to address Plaintiff's somatoform disorder, ECF No. 20 at 10, however the ALJ

17 addressed it and the finding was supported by substantial evidence, as discussed

18 *infra.*  Additionally, the ALJ found Dr. Smiley's diagnosis of chronic pain

19 syndrome was not supported by the evidence.  Tr. 25.  Plaintiff does not challenge

20 the ALJ's finding regarding chronic pain syndrome.  As the ALJ's finding that

ORDER - 11

1  Plaintiff's somatoform disorder and chronic pain syndrome are not severe

2  impairments is supported by substantial evidence, the ALJ reasonably rejected Dr.

3  Smiley's opinion that Plaintiff would have missed work due to those conditions.

4         The ALJ reasonably interpreted Dr. Smiley's opinion as supporting a light

5  RFC with additional limitations.  Further, any error in rejecting Dr. Smiley's

6  opinion would be harmless as Dr. Smiley stated he only suspected Plaintiff would

7  have missed work, and did not specify how many days of work Plaintiff would

8  have missed due to an inability to work.  *See Molina,* 674 F.3d at 1115.

9      **B. Step Two**

10        Plaintiff contends the ALJ erred in failing to find Plaintiff's somatoform

11 symptom disorder is a severe impairment at step two.  ECF No. 20 at 10-12.

12        At step two of the sequential process, the ALJ must determine whether the

13 claimant suffers from a "severe" impairment, i.e., one that significantly limits his

14 physical or mental ability to do basic work activities.  20 C.F.R. § 404.1505.

15 When a claimant alleges a severe mental impairment, the ALJ must follow a two-

16 step "special technique" at steps two and three.  20 C.F.R. § 404.1520a.  First, the

17 ALJ must evaluate the claimant's "pertinent symptoms, signs, and laboratory

18 findings to determine whether [he or she has] a medically determinable

19 impairment."  20 C.F.R. § 404.1520a(b)(1).  Second, the ALJ must assess and rate

20 the "degree of functional limitation resulting from [the claimant's] impairments" in

ORDER - 12

1   four broad areas of functioning: understand, remember, or apply information;

2   interact with others; concentrate, persist, or maintain pace; and adapt or manage

3   oneself.  20 C.F.R. § 404.1520a(b)(2)-(c)(4).  Functional limitation is measured as

4   "none, mild, moderate, marked, and extreme."  20 C.F.R. § 404.1520a(c)(4).  If

5   limitation is found to be "none" or "mild," the impairment is generally considered

6   to not be severe.  20 C.F.R. § 404.1520a(d)(1).  If the impairment is severe, the

7   ALJ proceeds to determine whether the impairment meets or is equivalent in

8   severity to a listed mental disorder.  20 C.F.R. § 404.1520a(d)(2)-(3).

9        Step two is "a de minimus screening device [used] to dispose of groundless

10   claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "Thus, applying

11   our normal standard of review to the requirements of step two, [the Court] must

12   determine whether the ALJ had substantial evidence to find that the medical

13   evidence clearly established that [Plaintiff] did not have a medically severe

14   impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687

15   (9th Cir. 2005).

16        The ALJ found Plaintiff's somatoform symptom disorder is not a severe

17   impairment.  Tr. 19.  Plaintiff contends the ALJ failed to mention Plaintiff's

18   somatoform symptom disorder, ECF No. 20 at 11, ECF No. 22 at 3, 6, however the

19   ALJ explicitly addressed the condition, *see* Tr. 19.  The ALJ considered the four

20   broad areas of functioning and determined Plaintiff's psychological conditions

ORDER - 13

1    cause no more than mild limitations. *Id.* The ALJ relied on the opinion of the

2    State agency consultant, Dr. Kraft, who opined Plaintiff has only mild limitations

3    in understanding, remembering, or applying information, interacting with others,

4    and concentrating, persisting, or maintaining pace, and no limitations in adapting

5    or managing oneself. *Id.* (citing Tr. 74). Dr. Kraft's opinion is consistent with the

6    other State agency consultant's opinion. Tr. 62. The ALJ also found Dr. Kraft's

7    opinion is consistent with Plaintiff not seeking any mental health treatment, and

8    Plaintiff generally having normal mental status examinations. Tr. 19.

9        The ALJ's finding is also supported by the opinions of examining sources.

10   While Plaintiff contends the ALJ ignored Dr. Friedman's examination findings,

11   ECF No. 22 at 3, the ALJ considered the opinion of Dr. Friedman, who performed

12   a psychiatric independent medical examination in May 2015. Tr. 24. Dr.

13   Friedman diagnosed Plaintiff with somatic symptom disorder, and opined there is

14   no reason Plaintiff could not be gainfully opined. *Id.* (citing Tr. 356-57). While

15   Plaintiff argues Dr. Friedman's examination supports the argument that the

16   condition is a severe impairment, ECF No. 20 at 12, Dr. Friedman found Plaintiff

17   has no psychological limitations, which supports a finding the condition is not

18   severe. Dr. Genthe also performed a psychological examination of Plaintiff in

19   2013. Tr. 324-28. Dr. Genthe did not diagnose Plaintiff with somatoform

20   symptom disorder, and opined Plaintiff does not have any limitations due to

ORDER - 14

psychological conditions.  Tr. 25 (citing Tr. 327-28).  The ALJ's finding that somatoform symptom disorder is not a severe impairment is supported by substantial evidence.

Further, any error in finding the condition non-severe would be harmless. Plaintiff does not point to any limitations caused by somatoform symptom disorder that were not already incorporated in the RFC.  Plaintiff points only to Dr. Smiley's opinion that Plaintiff may have missed work, ECF No. 20 at 12, however the ALJ rejection of Dr. Smiley's opinion is supported by substantial evidence, as discussed *supra*.  Additionally, the ALJ took Plaintiff's somatoform symptom disorder into consideration when crafting the RFC, as the ALJ included limitations "over and above what was supported by his physical condition."  Tr. 24-26.  As such, any error is harmless.  *See Molina,* 674 F.3d at 1115.

## C. Plaintiff's Symptom Claims

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting his symptom claims.  ECF No. 20 at 12-17.  An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16–3p, 2016 WL 1119029, at *2. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (quotation marks omitted).

ORDER - 15

1   "The claimant is not required to show that [the claimant's] impairment could

2   reasonably be expected to cause the severity of the symptom [the claimant] has

3   alleged; [the claimant] need only show that it could reasonably have caused some

4   degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

5       Second, "[i]f the claimant meets the first test and there is no evidence of

6   malingering, the ALJ can only reject the claimant's testimony about the severity of

7   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

8   rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations

9   omitted). General findings are insufficient; rather, the ALJ must identify what

10  symptom claims are being discounted and what evidence undermines these claims.

11  *Id*. (quoting *Lester*, 81 F.3d at 834; *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

12  Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's

13  symptom claims)). "The clear and convincing [evidence] standard is the most

14  demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995,

15  1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

16  924 (9th Cir. 2002)).

17      Factors to be considered in evaluating the intensity, persistence, and limiting

18  effects of a claimant's symptoms include: 1) daily activities; 2) the location,

19  duration, frequency, and intensity of pain or other symptoms; 3) factors that

20  precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and

ORDER - 16

side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence.  Tr. 22.

### 1. Inconsistent Objective Medical Evidence

The ALJ found the objective medical evidence is inconsistent with Plaintiff's symptom claims.  Tr. 22-24.  An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch v. Barnhart*, 400

ORDER - 17

F.3d 676, 680 (9th Cir. 2005).  However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

Here, the ALJ found that Plaintiff's reported physical symptoms and limitations are not consistent with the objective evidence.  Tr. 22-24.  The ALJ considered the generally normal examination findings, and multiple opinions from examining providers who opined Plaintiff did not have any limitations due to his physical impairments, and stated Plaintiff could return to work or pursue typing and school activities.  Tr. 22, 271-90, 298, 318-19, 334-49, 376, 380.  Plaintiff's EMG showed only mild to moderate ulnar nerve palsy, and he then underwent a nerve decompression.  Tr. 24 (citing Tr. 379, 442).  The ALJ also noted that when Plaintiff was establishing care at a new clinic in December 2014, he did not mention any issues with his hands.  Tr. 24 (citing Tr. 627).

The ALJ also found Plaintiff's reported psychological symptoms and limitations are not consistent with the objective evidence.  Tr. 24.  Plaintiff's May 2015 psychiatric examination was generally normal, and the provider opined Plaintiff had no limitations due to any psychological symptoms.  Tr. 24 (citing Tr. 350-67).  Plaintiff also did not pursue mental health treatment, and his mental status was generally noted as normal.  Tr. 19 (citing Tr. 407, 472, 474, 476).

ORDER - 18

Plaintiff offers an alternative interpretation of the evidence, ECF No. 20 at 13-15, however, the ALJ's finding that the objective findings were out of proportion with and did not corroborate Plaintiff's report of severe physical and psychological restrictions is reasonable.  This was a clear and convincing reason, along with the other reason offered, to discount Plaintiff's symptom reports.

### 2. *Activities of Daily Living*

The ALJ found Plaintiff's activities of daily living were inconsistent with his symptom claims.  Tr. 24.  The ALJ may consider a claimant's activities that undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina*, 674 F.3d at 1113.  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  Additionally, the ability to care for others without help has been considered an activity that may undermine claims of totally disabling pain.  *Rollins,* 261 F.3d at 857.  However, if the care activities are to serve as a basis for the ALJ to discredit the Plaintiff's symptom

ORDER - 19

claims, the record must identify the nature, scope, and duration of the care

involved and this care must be "hands on" rather than a "one-off" care activity.

*Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).

     Plaintiff argues his activities of daily living are not inconsistent with his

claims, ECF No. 20 at 15, however Plaintiff reported significant limitations, such

as an inability to walk further than one block before needing to rest for a minute,

and an inability to pay attention for longer than 10 minutes, Tr. 227, and he

reported difficulties using his hands for more than a couple minutes before needing

to rest his hands for an hour, Tr. 21 (citing Tr. 266).  These statements are

inconsistent with Plaintiff's reported ability to drive, handle his personal care,

grocery shop one to two times per week, mow the lawn, bicycle, independently

handle household tasks including laundry, dishes, vacuuming, dusting, cooking,

and yardwork, and provide care for his young child.  Tr. 24, 222-28, 300, 326, 330,

636.  While the ALJ did not obtain specific information about the nature, duration,

and scope of Plaintiff's childcare activities, Plaintiff repeatedly explained he

spends his days providing care for a toddler.  Any error in the ALJ's consideration

of Plaintiff's childcare activities would be harmless, as the ALJ articulated other

activities inconsistent with his symptom complaints.  *See Molina,* 674 F.3d at

1115.

1    **D. Step Five**

2         Plaintiff contends the ALJ erred at step five because the vocational

3    testimony was based on an incomplete hypothetical.  ECF No. 20 at 17.  At step

4    five of the sequential evaluation analysis, the burden shifts to the Commissioner to

5    establish that 1) the claimant can perform other work, and 2) such work "exists in

6    significant numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2);

7    *Beltran*, 700 F.3d at 389.  In assessing whether there is work available, the ALJ

8    must rely on complete hypotheticals posed to a vocational expert.  *Nguyen v.*

9    *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ's hypothetical must be

10   based on medical assumptions supported by substantial evidence in the record that

11   reflects all of the claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165

12   (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by

13   the medical record."  *Tackett*, 180 F.3d at 1101.

14        The hypothetical that ultimately serves as the basis for the ALJ's

15   determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

16   assessment, must account for all the limitations and restrictions of the claimant.

17   *Bray*, 554 F.3d at 1228.  As discussed above, the ALJ's RFC need only include

18   those limitations found credible and supported by substantial evidence.  *Bayliss*,

19   427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of

20   the limitations that the ALJ found credible and supported by substantial evidence

in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's

limitations, then the expert's testimony has no evidentiary value to support a

finding that the claimant can perform jobs in the national economy." *Id*. However,

the ALJ "is free to accept or reject restrictions in a hypothetical question that are

not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973

(9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions

presented in a hypothetical question propounded by a claimant's counsel if they are

not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-

57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A

claimant fails to establish that a step five determination is flawed by simply

restating argument that the ALJ improperly discounted certain evidence, when the

record demonstrates the evidence was properly rejected. *Stubbs-Danielson v.*

*Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2006).

Plaintiff's argument is based entirely on the assumption that the ALJ erred in

considering Plaintiff's severe impairments, the opinion evidence, and Plaintiff's

symptom claims. For the reasons discussed throughout this decision, the ALJ's

consideration of Plaintiff's severe impairments, the opinion evidence, and

Plaintiff's symptom claims was legally sufficient and supported by substantial

evidence. Thus, the ALJ did not err in assessing the RFC or finding Plaintiff

capable of performing work existing in the national economy.

ORDER - 22

1

## CONCLUSION

2     Having reviewed the record and the ALJ's findings, the Court concludes the

3 ALJ's decision is supported by substantial evidence and free of harmful legal error.

4 Accordingly, **IT IS HEREBY ORDERED**:

5     1. Plaintiff's Motion for Summary Judgment, **ECF No. 20**, is **DENIED**.

6     2. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

7     3. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

8     The District Court Executive is directed to file this Order, provide copies to

9 counsel, and **CLOSE THE FILE**.

10     DATED March 29, 2021.

11                         _s/Mary K. Dimke_
                          MARY K. DIMKE
12               UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

ORDER - 23